NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 11-1554

STATE OF LOUISIANA

VERSUS

D. R. M.

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 68257
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Billy Howard Ezell, Judges.

AFFIRMED.

Don M. Burkett
District Attorney
Eleventh Judicial District
P. O. Box 1557
Many, LA 71449
(318) 256-6246
COUNSEL FOR PLAINTIFF/APPELLEE:
        State of Louisiana

**Carey J. Ellis, III**
**La. Appellate Project**
**707 Julia St.**
**Rayville, LA 71269**
**(318) 728-2043**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **D. R. M.**

**Anna Louise Garcie**
**Attorney at Law**
**P. O. Box 1557**
**Many, LA 71449**
**(318) 256-6246**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**PETERS, J.**

The State of Louisiana (state) charged the defendant, D.R.M.,[1] with the offense of aggravated rape of R.B., his stepdaughter and a child under the age of thirteen, in violation of La.R.S. 14:42. The defendant waived a jury trial, and after a bench trial, the trial court convicted the defendant of the offense. Thereafter, the trial court sentenced the defendant to serve life in prison without benefit of parole, probation, or suspension of sentence. The defendant appeals his conviction asserting two assignments of error, and for the following reasons, we affirm the defendant's conviction in all respects.

## DISSCUSSION OF THE RECORD

The evidentiary record establishes without dispute the dates of certain events pertinent to this litigation. The victim in this case, R.B., was born on November 1, 1995, and is one of two children born to the marriage of her mother, K.B., and her former husband. The other child is a male whose age was not established at trial, but the evidentiary record does note that he was twenty-one years old at the time of June 23, 2011, trial.

K.B.[2] married the defendant on August 9, 2003. For the next few years, K.B.'s children moved back and forth between the home that K.B. shared with the defendant and her former husband's home. However, in 2007, both children came to live full-time with K.B. and the defendant.

According to her mother, R.B. began her menstrual cycle in mid-2007 between the fifth and sixth grades. At the time, she was a few months short of her twelfth birthday. Other pertinent dates include the purchase of a four-wheeler on February 6, 2007, the older brother's July 2, 2008, departure from home to attend

---

[1] Initials are used in this opinion pursuant to the requirements of La.R.S. 46:1844(W).

[2] At trial, K.B. referred to herself by her maiden name. However, for clarity we will refer to her as K.B. throughout the opinion.

college in North Carolina, and the purchase by the defendant and K.B. of a second vehicle in December of 2008.

These dates are important in evaluating the facts surrounding the offense itself because the defendant asserted at trial that, although he did have oral and vaginal sexual intercourse with his stepdaughter, the acts were consensual, and furthermore, that the first such act occurred after the purchase of the second vehicle in December of 2008.

The criminal activity came to the attention of law enforcement authorities on July 27, 2010. K.B. telephoned the Sabine Parish 911 Emergency Assistance Office to report that she had walked in on R.B. and a nineteen-year-old male engaged in consensual sex in the girl's bedroom. Before law enforcement officers arrived, K.B. confronted her daughter and asked if she had been intimate with other men. After initially denying any other sexual activity, and in response to her mother's interrogation, R.B. finally confessed that she and the defendant had been engaged in sexual activity for two years. When Detective David Self of the Sabine Parish Sheriff's Office arrived at the home of K.B. and the defendant in response to the 911 call, R.B. again repeated her statement concerning the defendant, and added that she had told her best friend, C.H., two years earlier when the activity first began.

In furtherance of his investigation and within days after receiving the initial report of criminal activity, Detective Self arranged for R.B. to be interviewed at the Rapides Advocacy Center in Alexandria, Louisiana; interviewed C.H.; and questioned the defendant. The charge against the defendant arose as a result of Detective Self's findings in his investigation.

At trial, R.B. testified that the defendant began his criminal violation of her by making her perform oral sex on him. She asserted that while she performed the

2

oral sex act, he would touch and feel her on her private parts. She placed the timing of the first act of this nature to have occurred before she began her period. According to R.B., the beginning of her menstrual cycles caused a significant change in the way the defendant approached her. She testified that during menstruation, the defendant would keep his hands outside her clothes. At all other times, he would fondle her bare skin. R.B. also testified that sometime before her first menstrual cycle occurred, the defendant began rubbing her naked vagina with his penis, although he did not attempt penetration. At some point after this initial activity, and before her brother left for college in July of 2008, he began inserting his penis in her vagina. According to R.B., sexual intercourse continued on a regular basis, sometimes in the truck near a cemetery, and sometimes in places traveled to on the four-wheeler.

R.B. testified that the defendant told her not to tell anyone because, if she did, they both would be in trouble. The only person she told was C.H., her best friend and confidant.

C.H. was born on May 15, 1996, making her fifteen at the time of trial. She and R.B. have been friends since the second grade and rode the school bus together every day. She testified that R.B. told her in confidence that the defendant had raped her once. According to C.H., they were in the fifth grade and at R.B.'s house for the weekend when this conversation occurred. C.H. tried to convince R.B. to tell K.B., but R.B. responded that she did not want to hurt her mother's feelings.

The defendant testified in his own defense and admitted that he and R.B. had engaged in oral and vaginal intercourse. However, he asserted that the acts were consensual and that the first time was not before acquisition of the second vehicle in December of 2008. He suggested that any sexual activity between him and R.B.

3

before July of 2008 would have been impossible because of the presence of R.B.'s older brother. According to the defendant, sometime after December of 2008, he walked in on his stepdaughter masturbating in her room, and given the scene before him, he only half-heartedly chastised her. Thereafter, it was not long before their sexual activity began in earnest. However, he asserted that all of the sexual activity occurred at home.

On appeal, the defendant asserted two assignments of error:

1. The [s]tate failed to present sufficient evidence to support the verdict of aggravated rape.

2. The trial court erred by failing to suppress the statements of the [d]efendant.

## OPINION

### *Errors Patent*

In addition to the assignment of errors raised by a defendant, La.Code Crim. P. art. 920(2) requires that we review an appeal for "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." We have performed this error patent review and find no such errors.

### *Assignment of Error Number One*

In his first assignment of error, the defendant questions the sufficiency of the evidence, not regarding the existence of a sexual relationship between him and R.B., but on the trial court's factual finding that the oral or vaginal sexual intercourse with R.B. began when she was under the age of thirteen.

Louisiana Revised Statutes 14:41(A) defines rape as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." The defendant was convicted of aggravated rape which, as it applies in this case, is defined in La.R.S. 14:42(A)(4) as a rape which occurs

4

"where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed . . . [w]hen the victim is under the age of thirteen years."

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Mussal*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La. 11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La. 4/26/96), 678 So.2d 1920. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86.

The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. While the reviewing court has the right to "impinge" on the trier of fact's factual conclusions, it is not allowed to substitute its own analysis of the facts for that of the trier of fact. *State v. Pigford*, 05-477 (La. 2/22/06), 922 So.2d 517.

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve " 'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.' " *McDaniel v. Brown,* 558 U.S. [120], 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

5

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378. (first and fourth alteration in original).

R.B. testified that the defendant had oral and/or vaginal intercourse with her prior to her thirteenth birthday. The trial court concluded that R.B.'s testimony was "compelling and credible." Additionally, the time line established by R.B.'s testimony was supported by that of both K.B. and C.H.

> A victim's or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. *State v. Davis*, 02-1043, p. 3 (La. 6/27/03); 848 So.2d 559. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04); 874 So.2d 66, 79.

*State v. Dorsey*, 10-216, pp. 43-44 (La. 9/7/11), 74 So.3d 603, 634, *cert denied*, __U.S.__, 132 S.Ct. 1859 (2012).

We find that a rational trier of fact could have found the elements of aggravated rape established beyond a reasonable doubt in this case. We find no merit in the defendant's first assignment of error.

### Assignment of Error Number Two

On December 15, 2010, the defendant filed a motion to suppress the videotaped confession he gave Detective Self on July 30, 2010. The trial court initially considered this motion at a hearing held January 3, 2011.

Detective Self testified at that hearing that after being advised of his constitutional rights pursuant to *Miranda v. Arizona* 384 U.S. 436, 86 S.Ct. 1602 (1966), the defendant initially denied having any form of sexual activity with R.B. at any time. When the defendant asked for an attorney, Detective Self stopped videotaping the interview. Five to ten minutes later, according to the detective, the defendant "looked at [him] and said 'David, I did it.'" According to Detective

6

Self, he returned the defendant to the interview room, read him his *Miranda* rights a second time, and asked the defendant if he wished to continue the interview without an attorney. Detective Self testified that the defendant waived his right to have his attorney present and as the second half of the interview progressed, the defendant admitted to having consensual oral and vaginal sexual intercourse with R.B. approximately twenty times in the ten to eleven months prior to July 30, 2010. It is this second part of the interview that is addressed by the defendant's motion to suppress. The state introduced the videotape, and what the state asserted was an accurate transcript of the contents of the videotape into evidence at the suppression hearing.

The trial court took the motion under advisement, and on February 16, 2011, denied the motion. In its reasons for denying the motion, the trial court stated that it found that the defendant's confession "appears to have been given freely and voluntarily and at his own insistence." In later hearings relating to the suppression issue, the trial court acknowledged that, in relying on the asserted accuracy of the transcript, it did not watch the videotape in its entirety. Over the defendant's continuing objection, the state introduced the confession into evidence at trial.

After the trial on the merits, the defendant filed a motion for new trial wherein he asserted that the videotape of the interviews included content not reflected in the transcript introduced at trial. After a July 14, 2011, hearing, the trial court took the issue under advisement. By a written order with reasons dated August 25, 2011, the trial court granted the defendant's motion. On August 31, 2011, the state filed a motion seeking clarification of the trial court's August 25 order, and this motion was heard by the trial court on September 29, 2011.

In its reasons for granting the new trial, the trial court noted that there were significant discrepancies between the transcript provided at the suppression hearing

7

and the videotape of the interview. Specifically, it found that the videotape revealed Detective Self's continued interrogation of the defendant after he had requested legal counsel "nearly up to the time he confessed." The trial court noted also that over one hour had passed, and not five to ten minutes as Detective Self had suggested, between the end of the videotape and the renewal of the interview; and furthermore, that Detective Self "was untruthful and purposefully evasive to [the trial] court at the motion to suppress hearing" and "reinitiated the interrogation moments after defendant demanded an attorney and the audiotape recorder was turned off." In other words, the trial court concluded that the defendant could not have reinstated the interrogation because it had never stopped and; therefore, the defendant never waived his right to counsel.

At the September 29, 2011, hearing, the trial court took the state to task for submitting to the trial court a transcript that it had not checked for accuracy, and restated its displeasure with what it considered an intentional attempt to mislead the court. Specifically, the trial court noted that "justice was not served by incomplete transcripts that were submitted by the Office of the District Attorney upon which [the trial] court could not rely regarding constitutional violation of the defendant's Fifth Amendment right to counsel." Nevertheless, the trial court set aside its earlier ruling and denied the motion for new trial because "the record, in and of itself, without the subject confession, supports a finding that any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." In the October 21, 2011, written reasons for this ruling, the trial court specifically noted that it could find the defendant guilty of the offense "without reliance on the confession." Specifically, the trial court found the admission of the confession into evidence to be "harmless error and that the record, in and of itself, without the subject confession, supports a

8

finding that any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged[.]"

The defendant also asserts that the trial court erred in failing to suppress the defendant's statements. In considering this issue, we first note that "[a]n error is harmless if it is unimportant in relation to the whole and the verdict rendered was surely unattributable to the error." *State v. Koon*, 96-1208 p.8 (La. 5/20/97), 704 So.2d 756, 763, *cert. denied*, 522 U.S. 1001, 118 S.Ct. 570 (1997). However, because the evidence to be suppressed in this case is that of a coerced confession, we must take great care in determining whether or not its admission into evidence is mere harmless error. *State v. Leger*, 05-0011 (La. 7/10/06), 936 So.2d 108; *cert. denied*, 549 U.S. 1221 127 S.Ct. 1279 (2007).

After thorough review, we find no error in the trial court's conclusion that the introduction of the defendant's confession was harmless error. Absent the confession, the state presented sufficient evidence to prove each element of aggravated rape beyond a reasonable doubt. We find no merit in this assignment of error.

## DISPOSITION

For the foregoing reasons, the defendant's conviction is affirmed in all respects.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules —Courts of Appeal, Rule 2-16.3.